MADLYN FAFARD, trustee,[1] & another[2] *vs.* CONSERVATION
COMMISSION OF BARNSTABLE.

Barnstable. May 4, 2000. - August 1, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Municipal Corporations,* By-laws and ordinances, Conservation commission.
*Trust,* Public trust. *Wetlands Protection Act. Statute,* Construction.

Discussion of the public trust doctrine under which the Commonwealth holds
shorelands in trust for the use of the public. [197-199]
This court concluded that, absent a grant of authority from the Commonwealth,
a municipality may not claim powers to act on behalf of public trust rights.
[199]
A section of a municipal bylaw that purported to grant a municipal conserva-
tion commission authority to further the public's interest under the public
trust doctrine was invalid, and the applicable severability provision of the
bylaw operated to save other sections. [200]
A municipality's adoption of a wetlands protection bylaw and the conserva-
tion commission's promulgation of regulations thereunder governing
permits for specified activities including construction of private piers or
docks were not inconsistent with provisions of G. L. c. 91, where the local
regulations did not frustrate but rather furthered the public interests the
statute was intended to protect [200-202]; where the statute evinced no
clear legislative intent to preclude local permitting [202-203]; and where
the statutory provisions were not so comprehensive as to be intended to
preempt local regulation on the subject [204-205].
A municipal conservation commission acted within its authority under the lo-
cal bylaw to deny a permit to build a pier on the basis that the pier would
have a significant adverse impact on recreation. [205-207]

CIVIL ACTION commenced in the Superior Court Department on
October 3, 1997.

The case was heard by *Gerald F. O'Neill, Jr.,* J., on a motion
for judgment on the pleadings.

The Supreme Judicial Court granted an application for direct
appellate review.

*Stephen D. Anderson* for the plaintiffs.

[1]Of the RoseLee Trust.
[2]Howard Fafard, her husband (Fafards).

*Robert D. Smith,* Town Attorney, for the defendant.

The following submitted briefs for amici curiae:

*John W. Spillane & Joseph W. Spillane* for Massachusetts Marine Trades Association.

*William L. Lahey & Kevin Batt* for Waterways Users Association.

*John A. Pike* for Conservation Law Foundation & another.

*James A. Toomey, Kristin B. Magendantz, & Thomas J. Urbelis* for City Solicitors & Town Counsel Association.

ABRAMS, J. The plaintiffs, Madlyn and Howard Fafard (Fafards), appeal from the Conservation Commission of Barnstable's (commission's) decision denying them permission to build a fixed pier on the Eel River. The commission grounded its decision on town bylaws and pier regulations that claim authority to protect "the interests of recreation and public trust rights."

Pursuant to G. L. c. 249, § 4, the plaintiffs sought review in the nature of certiorari in the Superior Court. The Superior Court judge denied the Fafards' motion for judgment on the pleadings and affirmed the decision of the commission.[3] We granted the Fafards' application for direct appellate review.

The Fafards assert that the bylaws and pier regulations of Barnstable are invalid. According to them, only the Commonwealth may act to further public trust rights. They also argue that G. L. c. 91, which provides for State licensing of structures on coastal lands, preempts the pier regulations on which the commission based its decision. The Fafards also raise the issue of arbitrary and capricious decision-making by the commission, but that issue is not properly before us because it

[3]The judge noted in his decision that "[t]he record is unclear as to whether the [town of Barnstable] has been approved by the Department [of Environmental Protection (DEP)] to administer a local permitting program." This issue has been clarified on appeal: Barnstable was not authorized by the DEP to administer a DEP permitting program. Therefore, although we affirm the Superior Court judge's decision, we do so on different grounds.

We also note that a related action, which was consolidated with the instant case but decided separately, remains pending in Superior Court. That action, which is not before us, concerns whether the commission's denial of the Fafards' first notice of intent was untimely. We are concerned with the Fafards' second notice of intent to the commission.

is raised only in their reply brief. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).[4]

We conclude that only the Commonwealth or its express designee may act to further public trust rights. Therefore, those portions of the bylaw that claim to enforce public trust rights are not a valid exercise of the town's power. Consequently, the town could not grant such authority to the commission. We also conclude that, after the portions of the bylaw that claim public trust authority are struck, the remaining portion of the bylaw and pier regulations are not preempted by State statute. Because the commission also acted under valid portions of the town bylaw, we conclude that the commission's denial of the Fafards' request for a proposed pier was an appropriate exercise of municipal powers. We affirm the decision of the Superior Court.[5]

1. *Facts.* Barnstable enacted a wetlands protection bylaw (wetlands bylaw) in order to regulate work in and around wetlands more strictly than does the State's wetlands protection act. See G. L. c. 131, § 40 (Wetlands Protection Act); Barnstable Bylaws, c. III, art. XXVII, § 12. See generally art. 89, § 6, of the Amendments to the Constitution of the Commonwealth (Home Rule Amendment). The wetlands bylaw also purports to protect "public trust rights in trustlands." Chapter III, art. XX-VII, § 1. The wetlands bylaw vests in the commission the authority to issue and to deny permits for a number of specified activities affecting wetlands resources.

Pursuant to its powers under the wetlands bylaw, the commission adopted regulations for private piers and docks (pier regulations). The relevant pier regulations specify that piers may not extend more than twenty per cent of the width of a waterway and that piers serving private interests may not interfere with various water-related activities.[6] The pier regulations also specify that, "[t]hese regulations notwithstanding, the

---

[4]We observe, however, that our conclusion, *infra*, that the commission's decision was supported by the record dispenses with this argument.

[5]We acknowledge the submission of amici briefs on behalf of the following organizations: City Solicitors and Town Counsel Association; Massachusetts Marine Trades Association; Waterways Users Association; and Conservation Law Foundation, joined by Massachusetts Association of Conservation Commissions.

[6]This section of the regulations provides in relevant part: "In linear waterways no structure shall extend more than 20% of the waterway width at MLW [mean low water], except where location of existing channel dictates otherwise. In such waterways, i.e., rivers, narrow estuaries, etc., sufficient

[commission] will consider any and all pier proposals on a site specific basis, disposing of each according to its merit and the degree to which statutory interests have been protected and preserved at the locus."

The trust owns property, which the Fafards use as a seasonal residence, on the Eel River. The Eel River is a narrow coastal tidal inlet, approximately 2,000 feet long, closed at one end. The Fafards' property lies toward the closed end of the river.

In May, 1997, Howard Fafard filed a notice of intent with the commission as required by the wetlands bylaw seeking permission to construct a fixed pier and to install a ramp and floats to provide access from the upland portion of the property to the water. The proposed pier would extend forty-two feet beyond the mean low water mark into an area of the river which is 161 feet wide. Therefore, the planned pier would occupy more than twenty per cent of the width of the river and would stand on "Commonwealth tidelands," or lands below the mean high water mark. See G. L. c. 91, § 1; 310 Code Mass. Regs. § 9.02 (1994). The Fafards also proposed to keep their fifty-five foot twin-screw power boat at the pier, which, with a beam of sixteen feet, would extend another sixteen feet beyond the pier.

The commission held two public hearings and, on September 16, 1997, denied the Fafards' application "in the interest of recreation and public trust rights." In support of the denial, the commission found, inter alia, that (1) the proposed pier did not conform with the pier regulations; (2) the proposed pier would interfere with an existing mooring that had been in continuous use for over ten years; (3) the pier "would pose significant adverse impacts to the interest of recreation (such as navigation) and public trust rights"; and (4) the Fafards had not met their burden of proving that the pier would not have an "unacceptable significant and cumulative effect upon the wetland[s]."

2. *Public trust doctrine.* The Fafards argue that only the Commonwealth, or an entity to which the Commonwealth has delegated authority expressly, may act to further public trust rights. Based on the history of the public trust doctrine, discussed *infra*, we agree. The town, or the commission acting under the town's bylaw, may not claim authority under the

open water shall be maintained to sustain a variety of activities not specifically related to simply transiting the area in safety, such as cruising, fishing, sailboarding, swimming, etc. These require open water, and should not be eliminated for private interest."

public trust doctrine unless the Legislature has granted such authority expressly. Therefore, to the extent the bylaw and the commission's decision rest on a claim of authority to administer public trust rights, they exceed Barnstable's authority.

a. *Public trust doctrine.* Under the public trust doctrine, sovereigns hold shorelands in trust for the use of the public. See *Boston Waterfront Dev. Corp.* v. *Commonwealth,* 378 Mass. 629, 631-632 (1979) (providing history of public trust doctrine). When the Plymouth and Massachusetts Bay Colonies were settled, the Crown granted the title to and trusteeship of shore-lands in the colonies to the companies chartered to settle those colonies. *Id.* at 633-634. One portion of these shorelands passed into private ownership when the colonial ordinance of 1647 granted ownership of the flats, or the lands between the high and low water marks, to private upland owners in order to provide incentives for private parties to build wharves and docks. *Boston Waterfront Dev. Corp.* v. *Commonwealth, supra* at 634-635. This ownership interest was subject to the provision that the owner not interfere with "the rights of the public to have the benefit of the waters for navigation, fishing and fowl-ing." *Crocker* v. *Champlin,* 202 Mass. 437, 441 (1909). See *Opinion of the Justices,* 365 Mass. 681, 686 (1974); *Boston* v. *Richardson,* 105 Mass. 351, 362 (1870). When the original thirteen States became a nation, trusteeship of these interests on behalf of the public passed to the Commonwealth, which continues to act as trustee of the public's right to fishing, fowl-ing, and navigation on the flats.[7]

The Commonwealth, as successor to the colonial authorities, owns and controls lands seaward of the flats. See *Michaelson* v. *Silver Beach Improvement Ass'n, Inc.,* 342 Mass. 251, 253-254 (1961). These lands are held in trust by the Commonwealth to

---

[7]When the nation was formed, public trust authority, obligation, and owner-ship passed to the thirteen States. See *Shively* v. *Bowlby,* 152 U.S. 1, 14-15 (1894) ("upon the American Revolution, all the rights of the Crown . . . vested in the several States, subject to the rights surrendered to the national government by the Constitution of the United States"). Cf. *Opinion of the Justices,* 365 Mass. 681, 684-685 (1974) ("The property inherent in the crown in England was passed by charter to the Massachusetts Bay Colony and ultimately to the Commonwealth"). We treat the colonial ordinance of 1647 as applying to all the shorelands in the Commonwealth. See *id.* at 685, citing *Weston* v. *Sampson,* 8 Cush. 347, 353-354 (1851) ("[a]lthough strictly the ordinance was limited to the area of the Massachusetts Bay Colony, it has long been interpreted as effecting a Grant of the tidal land to all coastal own-ers in the Commonwealth").

preserve the general rights of the public. See *id.* at 253, quoting *Home for Aged Women* v. *Commonwealth*, 202 Mass. 422, 427 (1909) ("The waters and the land under [waters] beyond the line of private ownership are held by the State, both as owner of the fee and as the repository of sovereign power, with a perfect right of control in the interest of the public").[8] The Commonwealth's authority with respect to these lands, to which we refer today as "Commonwealth tidelands," is subject only to Federal law,[9] the State Constitution, and the State's obligations as trustee. Authority over pier construction on lands seaward of the flats, in which the Commonwealth's public trust authority is total, historically has been exercised by the Legislature. See, e.g., St. 1832, c. 51; St. 1832, c. 57; St. 1837, c. 229; St. 1839, c. 25; St. 1839, c. 77. See generally *Boston Waterfront Dev. Corp.* v. *Commonwealth*, *supra* at 641-645 (collecting statutes and cases involving the Legislature's grants of permission to build below low water mark).

This history of the origins of the Commonwealth's public trust obligations and authority, as well as jurisprudence and legislation spanning two centuries, persuades us that only the Commonwealth, or an entity to which the Legislature properly has delegated authority, may administer public trust rights.[10] This authority derives from the passage of trusteeship and ownership of lands from one sovereign authority to the sovereign authority of the Commonwealth. Absent a grant of authority from the Commonwealth, a municipality may not claim powers to act on behalf of public trust rights.

---

[8]See also *Opinions of the Justices*, 383 Mass. 895, 903 (1981) ("As to submerged lands, which may be described as land lying seaward of flats, no littoral landowner or anyone else has any special rights unless granted them by the Legislature").

[9]See *Michaelson* v. *Silver Beach Improvement Ass'n, Inc.*, 342 Mass. 251, 253 (1961), quoting *Home for Aged Women* v. *Commonwealth*, 202 Mass. 422, 427 (1909) ("The right of the Legislature in these particulars has been treated as paramount to all private rights, and subject only to the power of the Government of the United States to act in the interest of interstate or foreign commerce").

[10]The Commonwealth may delegate, and has delegated, its authority to preserve and regulate Commonwealth tidelands to State agencies or municipalities. See, e.g., G. L. c. 91, § 1 (regulatory authority of Department of Environmental Management (DEM) and DEP); G. L. c. 130, § 57 (municipalities may grant licenses for shellfish aquaculture on tidal flats or land under coastal waters); G. L. c. 130, § 29 (municipalities may authorize weirs, pound nets, and fish traps); G. L. c. 91, § 10A (harbormaster may regulate temporary moorings).

b. *Public trust doctrine and Barnstable commission.* The section of the bylaw that purports to grant powers to the commission to further the public's interest under the public trust doctrine conflicts with State law and is invalid. We treat this section of the bylaw, and any authority the commission derived from this section of the bylaw, as severed. See Barnstable Bylaws, c. III, art. XXVII, § 13 (severability clause, providing that invalidity of any provision of bylaw does not render any other provision invalid). We next turn to the Fafards' other arguments.

3. *Preemption.* The Fafards also argue that the unsevered portions of the bylaw, and the pier regulations enacted under those portions of the bylaw, are invalid because they are inconsistent with sections of G. L. c. 91.[11] We disagree.

"Municipalities may not adopt bylaws or ordinances that are inconsistent with State laws." *Boston Gas Co.* v. *Somerville,* 420 Mass. 702, 703 (1995), and cases cited. As a starting point in determining "whether a local ordinance is inconsistent with a statute, this court has looked to see whether there was . . . an express legislative intent to forbid local activity on the same subject." *Id.* at 704. Nothing in G. L. c. 91 states expressly that municipalities may deny permission to construct piers such as the Fafards proposed or that they may grant permission to construct piers. Therefore, we are confronted with one of the "hard cases . . . in which it is asserted that a legislative intent to bar local action should be inferred in all the circumstances." *Wendell* v. *Attorney Gen.,* 394 Mass. 518, 524 (1985).

a. *Frustration of purpose.* Legislative intent to bar local action may be inferred where "the local regulation would somehow frustrate the purpose of the statute so as to warrant an inference that the Legislature intended to preempt the subject." *Boston Gas Co.* v. *Newton,* 425 Mass. 697, 699 (1997). We examine whether the pier regulations frustrate the three sections of G. L. c. 91 that explicitly address the Commonwealth's pow-

[11]We are aware that G. L. c. 91 generally is viewed as an encapsulation of the Commonwealth's public trust authority and obligations. See, e.g., Comment, Massachusetts Chapter 91: An Effective Model for Statestewardship of Coastal Lands, 5 Ocean & Coastal L.J. 45, 45 (2000); Lahey, Chapter 91 Regulations: The Commonwealth Moves Toward Statewide Zoning, 35 B.B.J. 21 (April 1991). Nevertheless, we treat the public trust doctrine separately because, as our discussion illustrates, the Commonwealth's authority and obligations under the statute are not precisely coextensive with its authority and obligations under the public trust doctrine.

ers and responsibilities with respect to the licensing and permitting of piers on Commonwealth tidelands. See G. L. c. 91, §§ 2, 14, 18.

General Laws c. 91, § 2, sets forth the general rubric to be used by the DEP[12] in issuing State permits and licenses for pier construction: "In carrying out its duties . . . the department shall act to preserve and protect the rights in tidelands of the inhabitants of the [C]ommonwealth by ensuring that the tidelands *are utilized only for water-dependent uses or otherwise serve a proper public purpose"* (emphasis added). Section 2 also states that, in issuing licenses and permits, the DEP shall "protect the interests of the [C]ommonwealth." *Id.*

In *Golden* v. *Selectmen of Falmouth,* 358 Mass. 519 (1970), we considered whether a local bylaw was inconsistent with the State wetlands protection act. See G. L. c. 138, § 27A, as amended through St. 1969, c. 406.[13] We concluded that, because the State statute "establishes minimum State-wide standards . . . local communities [are] free to adopt more stringent controls" than those embodied in State law. *Id.* at 526. See *Lovequist* v. *Conservation Comm'n of Dennis,* 379 Mass. 7 (1979).[14]

Like the statute considered in *Golden* v. *Selectmen of Falmouth, supra,* G. L. c. 91, § 2, sets forth minimum standards. This section does not address the impact of pier construction on zoning regulations, public safety, the creation of nuisances, or other spheres traditionally within municipal authority. Rather,

---

[12]General Laws c. 91 refers to both the DEP and the DEM as "the department." Licensing functions are carried out by the DEP. Section 1 states that § 2 pertains only to the DEM. See G. L. c. 91, § 1. However, portions of § 2 explicitly mention the DEP and licensing. We therefore treat those portions as if they govern the DEP. See *PGR Mgt. Co., Heath Props.* v. *Credle,* 427 Mass. 636, 640 (1998) ("We construe statutes to give reasonable effect to all the statutory provisions and create a consistent body of law").

[13]General Laws c. 130, § 27A, as appearing in St. 1972, c. 510, was repealed in 1972 and incorporated into G. L. c. 131, § 40. See St. 1972, c. 784.

[14]According to the Fafards, the cited cases are inapposite because, unlike the wetlands protection statute, G. L. c. 91, § 14, requires the DEP to balance the public costs and benefits of proposed projects. The Fafards argue that such a weighing of costs and benefits is different from the task of environmental protection and would be frustrated by local regulation. We do not see the distinction that the Fafards draw between the tasks of managing natural resources and the environment and permitting pier construction on tidelands. Both, in our view, require a balancing of competing interests.

§ 2 specifies that the department may allow construction on Commonwealth tidelands only if that construction would serve a "proper public purpose."

The pier regulations do not usurp the DEP's authority to deny licenses or permits to applicants who seek to build structures that do not serve such a purpose. Rather, the pier regulations require a local permit *in addition* to the State requirement that applicants obtain a State permit. The existence of a local permitting program alongside the State program in no way interferes with the mandate of § 2.[15] See *Lovequist* v. *Conservation Comm'n of Dennis, supra*; *Golden* v. *Selectmen of Falmouth, supra.* Cf. *Crawford* v. *Building Inspector of Barnstable*, 356 Mass. 174, 180 (1969) ("No special rights accrue . . . because the pier was constructed under a license granted by the Commonwealth's Department of Public Works. The license was 'subject to all applicable Federal, State, County, and Municipal laws, ordinances and regulations' ").

We consider next whether the pier regulations are preempted by G. L. c. 91, §§ 14 and 18. Section 14 authorizes the DEP to "license and prescribe the terms for the construction or extension of [piers and other structures]." Section 14 specifies that the DEP may not permit structures unless they serve "a proper public purpose and . . . said purpose shall provide a greater public benefit than public detriment to the rights of the public." Section 14 thus requires that the DEP balance the public costs against the public benefits of a proposed project.

Section 18 specifies procedures for licensing programs administered by the DEP and provides for notice to local authorities when application for a DEP license is made. Section 18 requires the DEP to "take into consideration the recommendation of the local planning board in making its decision whether to grant a license." ·

---

[15]Our analysis with respect to § 2 applies also to § 10, which parallels § 2 and states, in relevant part: "The department shall have general care and supervision of the harbors and tide waters within the [C]ommonwealth . . . in order to prevent and remove unauthorized encroachments and causes of every kind which may . . . interfere with the navigation of such harbors, injure their channels or cause a reduction of their tide waters, and to protect and develop the rights and property of the [C]ommonwealth in such waters, flats and lands; and it may make such surveys, examinations and observations as it deems necessary therefor. The [DEP] shall protect the interests of the [C]ommonwealth in areas described herein in issuing any license and permit authorized pursuant to this chapter."

The Fafards argue that, because §§ 14 and 18 authorize the DEP to grant and deny licenses with local authorities acting only in an advisory capacity, we should infer that the Legislature intended to preclude local permitting programs. We disagree.

"The existence of legislation on a subject . . . is not necessarily a bar to the enactment of local ordinances and bylaws exercising powers or functions with respect to the same subject." *Bloom* v. *Worcester*, 363 Mass. 136, 156 (1973). Even where a statute specifies that local authorities act only in an advisory capacity to State licensing authorities, we need not infer that the Legislature intended to preclude local regulation. See *Golden* v. *Selectmen of Falmouth, supra* at 525. There, we considered whether a Falmouth zoning bylaw was preempted by G. L. c. 130, § 27A.[16] The State statute at issue required individuals planning to remove, fill, or dredge certain coastal areas to provide notice to local authorities. Municipalities were permitted to make recommendations to the department of public works, which retained ultimate authority over whether the proposed activities would be permitted. See G. L. c. 130, § 27A. We concluded that "[t]he fact that the [statute] confers upon a local board the advisory power to make recommendations concerning the installation of certain protective measures 'as may protect the public interest' does not, we think, preclude the authority of the local board acting under the zoning bylaw to initially authorize or bar a project." *Id.* at 525.

The same reasoning applies here. None of the language in either G. L. c. 91, § 14 or § 18, suggests that, because the statute allows municipalities to provide advice to the DEP, the Legislature intended to preclude local regulation of pier construction on Commonwealth tidelands. "The legislative intent to preclude local action must be clear." *Bloom* v. *Worcester, supra* at 155.

The bylaws further the interests the Legislature intended to protect in G. L. c. 91. As long as the DEP retains ultimate authority to reject projects for which the public costs do not outweigh the public benefits, Barnstable's local permitting program is not inconsistent with G. L. c. 91, §§ 14 and 18. See *Lovequist* v. *Conservation Comm'n of Dennis, supra* at 15. Barnstable's permitting program does not frustrate the purpose of the relevant sections of G. L. c. 91.

---

[16]The statute at issue has since been repealed and incorporated into another section of the Massachusetts General Laws. See note 13, *supra*.

b. *Field preemption.* Local regulation also may be preempted even where such regulation does not conflict directly with an existing statute: "in some circumstances we can infer that the Legislature intended to preempt the field because legislation on the subject is so comprehensive that any local enactment would frustrate the statute's purpose." *Boston Gas Co.* v. *Newton,* 425 Mass. 697, 699 (1997), quoting *Boston Gas Co.* v. *Somerville,* 420 Mass. 702, 703 (1995).

The sections of G. L. c. 91 that regulate pier construction are by no means comprehensive. As the preceding discussion of the relevant sections demonstrates, the Legislature provided only general principles to be used in regulating construction on Commonwealth tidelands. See G. L. c. 91, § 14. This distinguishes the instant case from those cited by the Fafards in support of their argument. See *Boston Gas Co.* v. *Newton, supra* (State regulation of public utilities industry, which has long been recognized as thoroughly regulated, see *Boston Edison Co.* v. *Boston,* 390 Mass. 772-774 [1984], preempts local ordinance); *Boston Gas Co.* v. *Somerville, supra* (same).

The Fafards, however, argue that, even if the statutes themselves are not comprehensive, the bylaws and pier regulations frustrate the Legislature's intent to create a centralized authority for managing Commonwealth tidelands. The Fafards suggest that this legislative intent is implicit in regulations promulgated by the DEP. See 310 Code Mass. Regs. § 9.07 (1996). Although regulations adopted by a State agency are not dispositive on the question of the scope of authority granted an agency by statute, "[w]e must uphold the regulation if it can be interpreted in harmony with the act by any reasonable construction." *Massachusetts Auto Body Ass'n, Inc.* v. *Commissioner of Ins.,* 409 Mass. 770, 777 (1991).

Title 310 Code Mass. Regs. § 9.07(3) establishes procedures for cities or towns seeking to administer "a local permitting program for small structures accessory to residences."[17] Cities or towns authorized by the DEP under this regulation may issue permits *in lieu of* the DEP, subject to appeal to the DEP. *Id.*

---

[17]We note that it is not at all clear that the regulation cited by the Fafards would apply to the proposed pier. The regulation allows for towns to issue DEP licenses for "small structures," which are defined as structures of less than 300 square feet below the mean high water shoreline. 310 Code Mass. Regs. § 9.07(3)(b)(1)(b). Based on the record before us, the proposed pier appears to exceed this area.

The bylaw and pier regulations do not purport to issue State permits in lieu of the DEP. The bylaw and pier regulations require a local permit in addition to the permit required by the DEP and are not inconsistent with DEP regulations allowing towns and cities to act as local surrogates for the DEP.[18]

The Fafards also complain that the commission "attempts to avoid . . . administrative review of its permitting decisions by DEP." Nothing in G. L. c. 91 "grants to the [DEP] the authority to authorize a project which [a] local board has vetoed." *Golden* v. *Selectmen of Falmouth, supra* at 525. Further, an individual in the Fafards' position may seek review of the commission's decision. "Such a person has exactly the same remedy . . . as is available under any other . . . by-law[,] an action in the nature of certiorari under G. L. c. 249, § 4." *Lovequist* v. *Conservation Comm'n of Dennis, supra* at 16.

4. *The commission's decision.* Because the pier regulations are not preempted by State statute, we consider whether, after severing the portions of the bylaw purporting to grant the commission authority to act on behalf of the public trust, the commission had the authority to deny permission to construct the pier. We conclude that it did.

The Legislature has granted local conservation commissions the authority to act to prevent alteration of wetlands in order to preserve certain wetlands values. See G. L. c. 40, § 8C; G. L. c. 131, § 40. Conservation commissions acting under G. L. c. 131, § 40, may take regulatory action to protect, inter alia, the recreational value of wetlands. *Lovequist* v. *Conservation Comm'n of Dennis, supra* at 12-13. Coastal wetlands subject to municipal regulation under G. L. c. 131, § 40, include "any bank, marsh, swamp, meadow, flat or other lowland subject to tidal action or coastal storm flowage." Thus, local conservation commissions are authorized by the Legislature to protect recreation values by regulating construction on Commonwealth tidelands.

The wetlands bylaw authorizes the commission to act to protect various wetlands values, "including, but not limited to, . . . recreation." Barnstable Bylaws, c. III, art. XXVII, § 1.

---

[18]This conclusion is supported by the DEP's superseding order of conditions, issued with regard to the Fafards' first notice of intent, see note 3, *supra*, which states that "[t]his order does not relieve the permittee or any other person of the necessity of receiving approval of the proposed project under the Town of Barnstable Wetland By-Law."

The pier regulations derive authority from this section of the bylaw, stating that "[t]he By-law protects each citizen's enjoyment of [tidelands and waters] by protecting the interests spelled out in [G. L. c. 131, § 40,] and Town of Barnstable Article XX-VII," and establishing "performance standards for private piers and docks."

The Fafards' proposed pier and ramp would extend across Commonwealth tidelands, which municipalities may regulate under G. L. c. 131, § 40, into submerged lands seaward of the low water mark. "When analyzing a grant of power to a municipal government we must keep in mind that 'a grant of an express power carries with it all unexpressed, incidental powers necessary to carry it into effect.' " *Greater Boston Real Estate Bd.* v. *Boston,* 397 Mass. 870, 876-877 (1986), quoting *Flynn* v. *Cambridge,* 383 Mass. 152, 158 (1981). Of course, as with other spheres of regulation that do not fall within a municipality's ordinary powers, "no local action may be taken without explicit legislative authorization," and we recognize "only those powers which are expressly conferred by statute or necessarily implied from those expressly conferred." *Greater Boston Real Estate Bd.* v. *Boston, supra* at 877, quoting *Church* v. *Boston,* 370 Mass. 598, 601 (1976). Therefore, the commission was authorized to protect recreational values by denying a permit for the pier.

Because of the proposed pier's large size, the commission determined that the pier would have a negative effect on recreation. Specifically, the commission found that the "Eel River in the subject reach is enjoyed by many recreational boaters who cruise the river to its end point and return to West Bay." The commission determined that, "as proposed, the pier would pose significant adverse impact[] to the interest of recreation" and would interfere with an existing mooring. Based on these findings, the commission cited recreational values as one of the bases for its decision in addition to public trust rights.

The commission's denial of permission to build the pier because it would impair recreational values is supported by the record. The denial is also a legitimate exercise of the commission's authority consistent with powers to protect wetlands

granted by the Legislature to municipal conservation commissions. See G. L. c. 131, § 40.[19]

*5. Conclusion.* Although the bylaws and pier regulations are not preempted by G. L. c. 91, they are void insofar as they claim authority to protect public trust rights without a legislative grant of authority or a grant of authority from the DEP. However, because the bylaw was severable and the commission's decision also is sustainable on the basis of powers granted by the Legislature to local conservation commissions, we conclude that the commission did not "substantially err[] in a way that materially affected the rights of the parties." *Massachusetts Bay Transp. Auth.* v. *Auditor of the Commonwealth,* 430 Mass. 783, 791 (2000).

*Judgment affirmed.*

---

[19]We note that there may also be common-law support for municipal actions under municipal police powers. As early as 1870, we characterized a town's grant of the "liberty to wharf" as an exercise "in the nature of a mere police regulation." *Boston* v. *Richardson,* 105 Mass. 351, 363 (1870).