## Commonwealth *vs.* Harold A. Muise.

No. 02-P-515.

Essex. April 8, 2003. - October 10, 2003.

Present: Grasso, Dreben, & Mills, JJ.

*Lobster. Municipal Corporations,* By-laws and ordinances, Conservation com-
mission, Police power. *Trust,* Public trust. *Harbors.*

This court affirmed the defendant's conviction for lobstering in the city of
Gloucester's inner harbor in violation of a waterways board regulation
forming part of the city's code of ordinances, where the regulation, which
was a traditional regulation intended to increase public safety, did not of-
fend the public trust or require specific delegation from the legislature.
[562-564]

COMPLAINT received and sworn to in the Gloucester Division
of the District Court Department on August 10, 2000.

A motion to dismiss was heard by *Richard A. Mori,* J., and
the case was heard by him.

*Paul L. Lees* for the defendant.

*James Janda,* Assistant District Attorney, for the
Commonwealth.

DREBEN, J. Relying on *Fafard* v. *Conservation Commn. of
Barnstable,* 432 Mass. 194, 198-200 (2000), the defendant
claims that the Gloucester waterways regulation under which he
was convicted is invalid. He argues that "[a]bsent a grant of
authority from the Commonwealth, a municipality may not
claim powers to act on behalf of public trust rights." *Id.* at 199.
We consider the reliance on *Fafard* misplaced and affirm his
convictions.[1]

After a bench trial, the defendant was convicted of lobstering
in Gloucester's inner harbor (sixteen counts) in violation of

[1]The judge imposed fines but stayed them pending appeal.

Gloucester waterways board regulation, art. VIII, § 1.A.1, of § 10-3(b) of the Code of Ordinances of the City of Gloucester.[2] The facts are not in contest. A Gloucester police officer testified at trial that he and his partner, with the aid of binoculars, saw the defendant pull at least sixteen lobster traps from underneath wharves at three locations where lobstering was prohibited under the regulation. When the officers went to the dock where the defendant tied his skiff, they saw lobsters in his boat. The defendant testified at trial and admitted pulling the traps, noting he had been fishing in the inner harbor for sixty years.

"Under the public trust doctrine [relied on by the defendant], sovereigns hold shorelands in trust for the use of the public. See *Boston Waterfront Dev. Corp.* v. *Commonwealth,* 378 Mass. 629, 631-632 (1979) (providing history of public trust doctrine)." *Fafard,* 432 Mass. at 198. The rights of the public include the use of the waters for "navigation, fishing and fowling." *Ibid.* These public interests both in lands owned by the Commonwealth and in lands owned privately[3] are held in trust by the Commonwealth. As determined in *Fafard, supra* at 199, "only the Commonwealth, or an entity to which the Legislature properly has delegated authority, may administer public trust rights."

Unless otherwise preempted by State statute, this limitation does not mean, however, that municipalities may not address certain subjects with respect to shorelands such as "zoning," "public safety," "nuisances, or other spheres traditionally within municipal authority." See *id.* at 201. For these ordinary and core functions of local government, no additional delegation by the Legislature is needed. *Fafard* contrasts these traditional powers of a municipality with other spheres of regulation that require explicit legislative authorization. *Id.* at 206, 207 n.19.

In *Fafard,* the conservation commission denied permission to the plaintiffs to construct a pier and based its decision on town

---

[2] He was also convicted of fishing with unmarked gear (sixteen counts), G. L. c. 130, § 38, and failing to display colors on his boat (one count), G. L. c. 130, § 38A. On appeal, he does not challenge the c. 130 convictions.

[3] The flats (the lands between the high and low water marks) passed into private ownership by colonial ordinance, but are subject to the rights of the public. The Commonwealth owns and controls the lands seaward of the flats.

bylaws and pier regulations claiming authority to protect "the interests of recreation and public trust rights." *Id.* at 195. Although holding that the bylaw and pier regulations were void insofar as they claimed authority to protect public trust rights without authority from the Commonwealth, the court held the commission's decision sustainable on the basis of powers explicitly granted by the Legislature to local conservation commissions to take "regulatory action to protect, inter alia, the recreational value of wetlands." *Id.* at 205, 207.

While in the present case there is no explicit grant of authority, the Gloucester regulation does not purport to protect the public trust, but rather is the ordinary and traditional police-power-public-safety regulation that needs no specific delegation. See art. 89, § 6, of the Amendments to the Constitution of the Commonwealth (Home Rule Amendment). Compare *Marshal House, Inc.* v. *Rent Review & Grievance Bd. of Brookline*, 357 Mass. 709 (1970). Not only did the judge find the ordinance to be a needed safety provision,[4] but the regulation itself specifically amends a section of the ordinances of the city of Gloucester (art. VIII, § 10-3[b]) entitled "Public Waterways Traffic and Safety."

As a traditional regulation intended to increase public safety, the regulation in question does not offend the public trust and does not require specific delegation from the Legislature.

*Judgments affirmed.*

---

[4]The judge, having made findings in a similar case, referred to those findings. He stated that the lines from lobster traps around piers would be dangerous in the event of a need to fight a fire and also were dangerous because of the ease with which a vessel could wrap a line around its propeller, rendering it unable to maneuver in the extremely crowded area where lobstering was prohibited. The defendant does not challenge the use of such findings nor does he challenge the judge's determination that the regulation is a public safety measure, but only argues that he did not pose a public safety risk. He points to testimony at trial of the police officer who did not consider the defendant's actions "as an issue of public safety" but rather as a violation of the ordinance. The officer's opinion as to the defendant's particular acts cannot be the basis for invalidating the application of the ordinance.