Cratsley, J.
The plaintiffs, Boston Edison Company d/b/a NSTAR Electric (“NSTAR”) and Verizon New England, Inc. d/b/a Verizon Massachusetts (“Verizon”), filed a Motion for Summary Judgment in the above action seeking a Declaratory Judgment that a municipal bylaw enacted by the Defendant is invalid. In response, the defendant, Town of Bedford (“Bed-ford”), has filed a Cross-Motion for Summary Judgment. All parties agree that the essential facts are not in dispute and each side feels that its legal position would entitle it to judgment as a matter of law. For the reasons stated below, the plaintiffs’ motion is ALLOWED. Accordingly, the defendant’s Cross-Motion is DENIED.
FACTS
On November 25, 1997, the Legislature enacted Chapter 164 of the Acts of 1997, “An Act Relative to Restructuring the Electric Utility Industry in the Commonwealth, Regulating the Provision of Electricity and Other Services, and Promoting Enhanced Consumer Protections Therein.” 9 Massachusetts Legislative Service, 1997 First Annual Session 637 (“M.L.S.”) (1998). Section 34B was added to M.G.L.c. 164 by the Acts of 1997, and provides in relevant part: “A distribution company or telephone company engaging in the removal of an existing pole and the installation of a new pole in place thereof shall complete the transfer of all wires, all repairs, and the removal of the existing pole from the site within 90 days from the date of installation of the new poles . . .” M.G.L.c. 164, §34B.
On July 31, 2003, the Legislature requested that the Department of Telecommunications and Energy (“DTE”) investigate the potential enforcement of G.L.c. 164, §3B. The legislature inquired, inter alia, about whether or not it should authorize penalties for those pole owners who fail to remove double pole sets and whether enforcement of the law should be carried out on a statewide basis as opposed to being executed by local authorities. This request is found in chapter 46 of the Acts of 2003, § 110. The DTE was also required under Chapter 46 of the Acts of 2003, §110 to hold a public hearing and issue a report regarding these and other issues surrounding the double-pole problem.
The DTE conducted an investigation and on September 28, 2003, issued a report entitled: Report of the Department of Telecommunications and Energy Re: Reducing the Number of Double Utility Poles Within the Commonwealth, D.T.E. 03-87, at 1 (2003) (hereinafter “Report”).[1] All parties to this action participated in the public hearing, held two days later on September 30, 2003.
The Report states that “A fundamental policy of the [DTE] is to ensure uniform and efficient utility services to the public . . . Pole owners operate across multiple municipalities. Individual municipal ordinances or by-laws enforcing the removal of poles and the transfer of wires, while designed to further legitimate local interests, would frustrate this policy.” Id. at 8-9. Further, the Report notes that the process of removing double-pole sets is often hindered by the untimely removal of facilities by entities that are individually licensed to use the poles (“attaches”) and by poor communication between attaches and the pole owners. Id. at 16, 17, 18.
The pole owners, in an effort to establish a better system of communication between themselves and the attaches regarding the pole transfer and removal process, have entered into an agreement to use the Pole *263 Lifecycle Management (PLM) system. Id. at 3. The PLM system is a web-based database that tracks information regarding double-poles and electronically notifies entities with facilities on the poles when it is time to transfer their facilities according to a previously established prioritization. Id. However, the Report notes that it is unclear at this time whether or not the system is an “adequate tool to ensure compliance with G.L.c. 164, §34B or to eliminate the backlog of double poles.” Report at 15. The Report required pole owners to submit plans for eliminating the backlog of double pole sets within 60 days of the issuance of the Report. Id. at 15. NSTAR and Verizon both agreed to participate in the PLM system, which was placed in service on February 22, 2003. Id. at 3, 4.
The DTE recommended to the Legislature that it continue its statewide oversight and enforcement of G.L.c. 164, §34B in order to ensure uniform and efficient service to the public. Id. at 7. It further recommended that penalties not be implemented until the DTE could assess the usefulness of the PLM system and could better identify the causes of the double-pole problem. Id. at 15.
On October 27, 2003, the Town of Bedford enacted Section 46.23 (the “bylaw”) of the Town of Bedford, Massachusetts’ General Bylaws, entitled “Prompt Removal of Utility Poles.” Within the bylaw is a reiteration of the G.L.c. 164, §34B requirement that utility companies must remove the original pole of double-pole sets within 90 days of the installation of the new pole. A subsequent provision of the bylaw imposes a penalty on the pole owner of one hundred dollars a day for each remaining pole after the expiration of the 90 days.
The bylaw received written approval of the Attorney General of the Commonwealth on November 12, 2003 and went into effect on November 14, 2003. Verified Complaint at ¶21. The 90-day time period set forth in the bylaw expired February 12, 2004. Complaint at ¶21. As of this date, Bedford has not taken any steps to assess fines or otherwise enforce the bylaw.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to summary judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 710 (1991). When presented with a motion for summary judgment, this Court must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine whether summary judgment is appropriate. McGuinness v. Cotter, 412 Mass. 617, 620 (1992), citing Mass.RCiv.P. 56(c).
The Plaintiffs argue that the bylaw is invalid under Section 6 of Article 89 of the Home Rule Amendment to the Massachusetts Constitution because it is inconsistent with state law, particularly G.L.c. 159, 164 and 166, the state’s regulatory scheme for public utilities.[2] When such a conflict exists, the State law preempts the local law. Boston Gas Company v. Somerville, 420 Mass. 702, 703 (1995). The Supreme Judicial Court (“SJC”) laid out the test for state preemption of local bylaws in Boston Gas Company v. Somerville:
To determine whether a local ordinance is inconsistent with a statute, this court has looked to see whether there was either an express legislative intent to forbid local activity on the same subject or whether the local regulation would somehow frustrate the purpose of the statute so as to warrant an inference that the Legislature intended to preempt the subject. Moreover, in some circumstances we can infer that the Legislature intended to preempt the field because legislation on the subject is so comprehensive that any local enactment would frustrate the statute’s purpose.
420 Mass. 702, 704. The high court went on to state:
The manufacture and sale of gas and electricity by public utilities is governed by G.L.c. 164. Given the comprehensive nature of this statute, we conclude that the Legislature intended to preempt local entities from enacting legislation in this area.
Id. at 704.
Bedford argues that G.L.c. 164, §34B does not preempt its bylaw because the two are not inconsistent and that G.L.c. 164 is not so comprehensive that it preempts all local enforcement in the utility arena. Given that the state law already requires double-pole sets to be removed within 90 days, Bedford contends that the bylaw does not place any additional burden on pole owners and, thus, furthers rather than conflicts with, G.L.C. 164, §34B. In support of its position, Bedford cites Fafard v. Conservation Commission of Barnstable, 432 Mass. 194 (2000), in which the SJC upheld local pier regulations over the plaintiffs argument that the Legislature intended to preempt local action. The High Court reasoned that the pier regulations furthered the interests that the Legislature had intended to protect, and merely imposed an additional local requirement upon those who sought to build a pier. Fafard, at 201-03.
There is some merit to the plaintiffs argument that the Legislature intended for the poles to be removed within 90 days, and that the bylaw does not conflict with *264 that piece of G.L.c. 164, §34B. However, this case is distinguishable from Fq/ctrdonseveralgrounds, leading me to conclude that its holding is not controlling. First, Fafard. is not a utilities case, and the SJC has stated several times that the additional burdens placed on utilities by local regulation should not undermine the purpose of chapter 164, which is to ensure uniform and efficient utiliiy services to the public. See Boston Gas Company v. City of Newton, 425 Mass. 697, 703 (1997) (portions of city ordinance assessing maintenance and inspection fees against utilities ruled inconsistent with, and preempted by, statute), citing Boston Gas v. Somerville, supra, at 706 (city ordinance governing street excavations ruled invalid under the Home Rule Amendment to the State Constitution because it was inconsistent with state’s regulatory scheme for public utilities). The Report, issued at the request of the Legislature, indicates that the bylaw would frustrate the ability to ensure uniform and efficient utility services. Report at 8-9. Given the potential for disruption of the services provided by pole attaches if local authorities are allowed to enact laws governing the transfer and removal process of double poles, this Court is persuaded that those services are sufficiently tied to “uniform and efficient utiliiy service” so that the SJC cases cited above cannot be distinguished.
Additionally, as described below, the penally provision of the Bedford bylaw does, in fact, conflict with the Legislative intent surrounding the enforcement of G.L.c. 164, §34B. It is clear from the opinion that the local pier regulation in Fafard furthered the Legislative intent in a more comprehensive manner, and the Court added that “the existence of a local permitting program alongside the state program in no way interferes with the mandate of §2.” Fafard, at 202 (emphasis added).
The Legislature’s request that the DTE investigate and make recommendations regarding statewide versus local enforcement of G.L.c. 164, §34B is powerful evidence of legislative intent to delay the imposition of penalties until they had considered the findings of the DTE. It is also evidence that the Legislature intended to take the findings of the DTE into account, or to at least consider the agency’s recommendations, before allowing local regulation over the double-pole problem. Thus, while the imposition of fines does not conflict with the explicit text of G.L.c. 164, §34B, and would actually work to further the interest of removing the poles, it oversteps the Legislature’s stated intent in Chapter 46 of the Acts of2003, § 110 to refer to the DTE the question of whether to enforce the statute on a statewide or local level.
The formulation of the PLM system and the participation of both of the plaintiffs in it weaken Bedford’s argument that the plaintiffs are merely trying to escape from their legal obligation to remove the double poles. This Court concludes that the Legislature wished to give the PLM system time to work, particularly since they have not said otherwise since the release of the DTE Report.
Given evidence of the Legislative intent surrounding the plan for enforcement of G.L.c. 164, §34B, as well as the Supreme Judicial Court’s broad statements supporting preemption when local regulations inhibit efficient utiliiy services, I am convinced that G.L.c. 164, §34B preempts Section 46.23 of the Town of Bedford, Massachusetts’ General Bylaws. Accordingly, this Court finds that there is no genuine issue of material fact and orders that a Declaratory Judgment issue in favor of the Plaintiffs as a matter of law.
CONCLUSION
For the foregoing reasons, it is hereby ORDERED that Plaintiffs’, Boston Edison Company d/b/a NSTAR Electric and Verizon New England, Inc d/b/a Verizon Massachusetts, Motion for Summary Judgment is ALLOWED. It is further ORDERED that the Defendant’s Cross-Motion for Summary Judgment is DENIED. Counsel for plaintiffs shall promptly submit a proposed Order for Final Judgment.

The Defendant has submitted a Motion to Strike the Report from evidence, asserting that it should not be admissible as a statement of the Legislative intent. The motion to strike is DENIED on the grounds that the Report falls within the official written records exception to the hearsay rule under the Proposed Mass. Rules of Evidence 803(8); Young Pollets, and Poreda, 20 Mass. Practice, MA.Evid.R. 803 (2d ed. 1998), as well as the existing federal rule 803(8). Further, this Court believes that the defendant’s motion mischaracterizes the plaintiffs purpose in submitting the Report into evidence as the plaintiff did not submit the contents of the Report to be considered as a statement of Legislative intent. Rather, it is the opinion of this Court that the purpose in submitting the Report was so that it would be considered as evidence of the DTE’s findings in the investigation it was asked to conduct by the Legislature.

It is worth noting that the double-pole removal provision, G.L.c. 164, §34B, is a part of the broad statute regulating utility services in chapter 164.