Toomey, J.
The plaintiffs, ten taxable inhabitants of the Town of Southbridge, brought this suit against the Town of Southbridge (the “Town”) and Wood Recycling, Inc. (“WRI”) (or, collectively, “defendants”) claiming *641 that the Town exercised and abused its municipal power in violation of G.L.c. 40, §53, by failing to comply with applicable statutory public bidding requirements. The case is now before the court on WRI’s motion to dismiss the Complaint against all parties on the Mass.R.Civ.P. 12(h)(3) and 12(b)(6) grounds that this court does not have subject matter jurisdiction and that the Complaint fails to state a claim' upon which relief can be granted. For the following reasons, the defendant’s motion to dismiss is ALLOWED.

BACKGROUND

On or about December 9, 1996, the Town and WRI entered into a twenty-year contract by which the Town hired WRI to operate and manage its sanitary landfill and recycling facility and to perform refuse and recycling collection within the Town.[3] As payment for the landfill operation services, the Town assigned to WRI the Town’s right to collect tipping fees for materials dumped into the Town’s landfill. The Complaint alleges that WRI is to retain the larger portion of the tipping fees as payment for services and is to return to the Town a small portion of the collected monies. The plaintiffs assert that, over the course of the contract, the anticipated tipping fees will amount to millions of dollars. The Complaint also claims that, as further consideration, the Town has waived its right to collect real estate taxes from WRI for the term of the contract, ostensibly pursuant to G.L. 44, §28C, but, in reality, in violation of G.L.c. 40, §59.
The contract provides that the Town shall continue to own the landfill and WRI is to serve as an onsite operator of the landfill. The contract also extended to WRI an option to purchase land south of the existing landfill. On or about February 2, 1999, WRI purchased approximately nineteen acres of land from the Town.
The plaintiffs commenced this action in December 1999, complaining that, in letting the contract, the Town failed to solicit bids and WRI failed to submit a bid, both omissions constituting violations of G.L.c. 30, §39M. The plaintiffs claim that, as a result of the no-bid contract, the public interest will be adversely affected because WRI will control and retain millions of dollars in tipping fees and a minimal return will flow to the Town and its taxpayers. The Complaint also alleges that the landfill is being filled at an accelerated rate, thus prematurely exhausting the facility. The plaintiffs also assert that the Town failed to obtain proper authorization for its waiver of WRI’s real estate taxes, thereby unlawfully causing further loss to the Town and taxpayers and that the Town exceeded its authority by selling the nineteen acres to WRI.
The plaintiffs demand, among other requests, that this court find that the contract is void for the defendants’ failure to submit the contract to public bidding laws.

DISCUSSION

Ginther v. Commissioner of Insurance, 427 Mass. 319, 322 (1998), teaches that, “[a] defendant may properly challenge a plaintiffs standing to raise a claim by bringing a motion to dismiss under Mass.R.Civ.P. 12(b)(1) or (6).” In reviewing such a motion to dismiss, the court must “accept the factual allegations in the plaintiffs’ complaint, as well as any favorable inferences reasonably drawn from them, as true.” Id. citing Nadar v. Citron, 372 Mass. 96, 98 (1977). At bar, accepting all of the plaintiffs’ allegations and favorable inferences as true, the court nevertheless concludes that the plaintiffs do not have standing to press the instant complaint.
This court does not have general equity jurisdiction to “entertain a suit by individual taxpayers to restrain cites and towns from carrying out invalid contracts and performing other similar wrongful acts.” Pratt v. City of Boston, 396 Mass. 37, 42 (1985). Accordingly, when challenged by a motion to dismiss, the plaintiffs must affirmatively demonstrate a statutory foundation for its standing to pursue its claim. Id. The defendants contend that the plaintiffs’ suit fails to meet the standing requirements of G.L.c. 40, §53. That statute provides, in relevant part, that:
If a town ... , or any of its officers or agents are about to raise or expend money or incur obligations purporting to bind said town ... , for any purpose or object or in any manner other than that for and in which such town . . . , has the legal and constitutional right and power to raise or expend money or incur obligations, the supreme judicial or superior court may, upon petition of not less than ten taxable inhabitants of the town, . . . determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise of abuse of such corporate power.
(Emphasis added.) Section 53 makes clear that the “ten taxable inhabitants” are entitled to relief only if the town is “about to” raise or expend money, or incur obligations; the right to sue is not extant if the challenged action has already occurred. Kapinos v. Chicopee, 334 Mass. 196, 198 (1956) (plaintiffs in ten taxpayer suit lacked standing because they petitioned court eleven months after city contracted with construction company to remove fill from city land); Fuller v. Trustees of Deerfield Academy, 252 Mass. 258, 260 (1925) (holding that G.L.c. 40, §53 is preventive, not retroactive, and cannot be employed to correct wrongs wholly executed and completed).
At bar, the Town incurred its obligation to WRI on December 9, 1996, the date on which the contract was executed and a full three years prior to plaintiffs’ filing of this action. Since that time, the Town and WRI have performed under the contract. Thus, the Town has already incurred its contractual obligations, and the language of G.L.c. 40, §53 would seem destructive of plaintiffs’ claim to standing.
*642 The plaintiffs do not dispute that the contract has already been joined and its terms have been performed to date. Their position is, however, that the contract is a service contract under which WRI is periodically paid by the Town’s assignment of tipping fees, in contrast to a fully executed construction contract. Plaintiffs also suggest that the seventeen years remaining on the contract have yet to be performed and that the preclu-sive effects of §53 are thus not triggered. In essence, the plaintiffs contend that they have standing under G.L.c. 40, §53, because the remainder of the Town’s obligations have yet to be incurred. Therefore, the plaintiffs contend, this court has the equitable authority to address their demand that the court “split the contact in midstream.”
The plaintiffs rely on Edwards v. City of Boston, 408 Mass. 643 (1990), to illustrate their point. IxiEdwards, the City of Boston entered into a contract with a school bus service provider for the year 1989-990. Id. at 644. The contact contained an option for an additional year exercisable by the City. Id. In December 1989, however, the Legislature enacted the Uniform Procurement Act, G.L.c. 30B, which provides that certain municipal contracts be awarded by advertised competitive bidding. Id. When the City exercised the contract option extending the bus contract for the 1990-991 school year without soliciting bids, the plaintiffs brought a ten taxpayer suit under G.L.c. 40, §53. Id. at 644-45. Without addressing the issue of standing, the court held that the bid requirements of G.L.c. 30B applied to the exercise of the option, that the City failed to abide by the statutory requirements of c. 30B, and that plaintiffs were entitled to relief. Id. at 653.
The plaintiffs’ reliance on Edwards is misplaced. The issue of standing, central to the dispute at bar, was not raised in or addressed by the Edwards Court. Furthermore, the Edwards contract ended after one year, leaving the City with an option to create a new contract and incur a new obligation for a second year.[4] At bar, the Town is in the midst of a twenty year obligation. At the end of the twenty year period, WRI, not the Town, has the option to extend the contract. Only at the end of the twenty years, prior to WRI’s exercise of its option, would Edwards suggest that the taxpayers have standing under G.L.c. 40, §53.
We ought also note that plaintiffs’ painting of the Town contract as a service contract, in which obligations are not incurred until the service is performed, would defeat the Legislature’s purpose in creating G.L.c. 40, §53. The statute clearly requires the plaintiffs to bring suit before the obligation has incurred. Plaintiffs expansive reading of the contract would allow a ten taxpayer suit at any time over the twenty year duration of the contract — a result plainly at odds with the Legislature’s “about to” language.
This court has no quarrel with the plaintiffs’ proposition that statutory bidding procedures serve an important public function and strict adherence to bidding requirements must be promoted. See Phipps Products Corp. v. Massachusetts Bay Transportation Authority, 387 Mass. 687, 691-92 (1982). The court, however, has no authority, statutory or otherwise, to ignore the constructs of the narrowly defined ten taxpayer statute and to permit the plaintiffs, even for the laudable purpose of vindicating the bidding laws of the commonwealth, to bring a lawsuit which is plainly precluded by that statute. Therefore, the defendant’s motion to dismiss will be allowed.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED, that the Defendant’s Motion to Dismiss is ALLOWED.

 The contract provides that upon completion of the twenty year term, WRI has the option to renew the contract for up to four additional, five year terms or until such time as the landfill reaches capacity.

 The plaintiffs contend that the Edwards contract was “50% complete” at the time the taxpayer suit was initiated. This is an inaccurate representation of the contract, as it was a one year contract, with an option to renew. Accordingly, the Edwards Court did not simply allow the suit to commence halfway through an ongoing contract. Rather, the court determined that a new contract began upon the commencement of the second year.