BrassaRD, J.
Plaintiffs, Robert Mandell, Jacquelyn A. Mandell, Linda M. Phillips, Gary D. Phillips, John F. Russo, Susan J. Russo, Frederick O. Brown, Francis A. Hagan, Lewis F. White, Kendra Cooper, Denis Linnane, Mary Salazar, Eugenio A. Salazar, John Rodrigues, Cindy Rodrigues, Julie Rowe, William D. Rowe, Sandra Saltzman, Melvin F. Saltzman, Charles Pinkney, Winifred Robinson, and Alvin A. Robinson, Jr., request a preliminary injunction pursuant to G.L.c. 40, §53 to enjoin defendant, the Town of Reading (the “Town”), from expending further funds for design services to Earl R. Flansburgh & Associates (“Flansburgh”) in conjunction with a school renovation and construction project. Plaintiffs assert that the Town has violated G.L.c. 7, §§38A1 /2 through 380, the Designer Selection Statute, and that therefore, they are entitled to relief. For the following reasons, plaintiffs’ motion is denied.
FACTS
In May 1998, the Town, through the Reading School Building Committee (“School Building Committee”) issued a Request for Qualifications for Designer Services (“1998 RFQ”) and published advertisements in the central register[2] and the Reading Chronicle inviting bids for an elementary school feasibility study. The 1998 RFQ requested proposals addressing whether the Town should expand four existing schools or build a new elementary school in order to meet the health, safety, environmental, and program needs of its students.
Ten architectural firms responded to the 1998 RFQ and from this ten the School Building Committee recommended four firms for interviews.[3] Subsequently, the top ranked firm withdrew its proposal. As a result, at the request of one of the School Building Committee members, Flansburgh was added as a fifth candidate to be interviewed. On August 27, 1998, after having interviewed the selected firms, the School Building Committee voted to award the contract for the feasibility study to Flansburgh. Flansburgh produced a feasibility study dated November 5, 1998, which recommended both a renovation and an addition to the Barrows Elementary School (“Barrows School”) and the construction of a new elementary school. Plaintiffs claim that this feasibility study has not been produced.
On December 10, 1998, the Reading School Committee brought a request before the Town Meeting for the authorization for the construction of the new school and renovation and addition to the Barrows School. On that date the authorization was granted. On January 27, 1999, however, a group of individuals brought a petition for a referendum challenging the project. This referendum vote overturned the authorization for construction of the new school but upheld the authorization for the renovation and addition to the Barrows school. The Town did not proceed with the project on that basis.
Instead, on November 15, 1999, the Reading School Committee again brought a request before the Town Meeting for the authorization for the construction of the new school and the renovation and addition to the Barrows School.[4] On this date, the authorization was granted. Subsequently, on January 11, 2000, another referendum upheld the Town Meeting’s authorization of both the renovation and addition to the Barrows School and the construction of the new school.
On February 7, 2000, pursuant to the Superintendent’s request, the School Committee voted to authorize payment to Flansburgh on a time and materials basis for design work on the school project. On or about March 8, 2000, the Superintendent received an “Independent Review” performed by the architectural firm of Todd Lee-Clark-Rozas Associates, Inc., for $2,500 regarding Flansburgh’s feasibility study. The Independent Review stated that the feasibility study was reasonable, adequate, and appropriate, although it did reference the wrong architectural firm.
On or about March 9, 2000, the Town, through the School Committee, issued a Request for Qualifications for Designer Services for Construction of a new elementary school and renovation and addition to the Barrows School (“2000 RFQ”). In the 2000 RFQ, the Town stated that the professional services were to be performed in accordance with Flansburgh’s feasibility study.[5]
Flansburgh was the only design firm that submitted a proposal in response to the 2000 RFQ.[6] On or about March 27, 2000, the School Committee voted to award the contract to perform design services to Flansburgh. On or about March 24, 2000, plaintiffs Robert Mandell, Jacquelyn A. Mandell, Linda Phillips and Gary Phillips filed a bid protest with the Office of the Attorney General pursuant to G.L.c. 149, §44H, in *2 which they challenged the selection procedure adopted by the Town in granting the design services contract to Flansbiirgh. On May 11, 2000, an Assistant Attorney General denied the bid protest.
DISCUSSION
Plaintiffs seek a preliminary injunction restraining the Town from entering into a design contract with Flansburgh. In order for the court to issue a preliminary injunction, generally the moving party must demonstrate a likelihood of success on the merits and a substantial risk of irreparable harm. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).
If suit is brought by a citizen acting as a private attorney general for the purpose of enforcing a statute or a declared policy of the Legislature, irreparable harm does not have to be shown. LeClair v. Town of Norwell, 430 Mass. 328, 331 (1999), citing Edwards v. Boston, 408 Mass. 643, 646-47 (1990). “A judge, in these circumstances, must first determine whether there is a likelihood of success on the merits of a plaintiffs claims and then determine whether ‘the requested order promotes the public interest, or alternatively, that the equitable relief will not adversely affect the public.’ ” LeClair, 430 Mass. at 331-32, quoting Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984). Furthermore, if a plaintiff alleges a statutory violation, the Court should consider how this violation affects the public interest. Mass. CRINC, 392 Mass, at 89. Thus, in the present case, plaintiffs must show (1) that a likelihood of success on the merits exists and (2) that the issuance of the injunction would serve the public interest. Edwards, 408 Mass, at 646-47.
Plaintiffs assert that a likelihood on the merits exists because the Town violated G.L.c. 7, §§38Al/2-380 on three separate occasions. First, plaintiffs allege that defendant violated G.L.c. 7, §§38Al/2-380 in May 1998 when the Town issued the 1998 RFQ. Plaintiffs claim that the advertisement placed in the Reading Chronicle failed to contain a description of the project, the estimated construction cost of the project, the time period within which the project was to be completed, or any information regarding the fee to be paid for the feasibility study, all of which are required by G.L.c. 7, §38D. Second, plaintiffs assert that the Town violated G.L.c. 7, §38D because when the Town entered into the time and materials contract with Flansburgh, an advertisement for the contract was never published to the public as required by G.L.c. 7, §38D. Third, plaintiffs assert that the 2000 RFQ did not comply with the requirements of G.L.c. 7, §38D. Plaintiffs also assert that the Town has violated the Policy of the Reading School Committee which states that if the advisory committee wishes to choose a firm for the feasibility study not originally ranked by the advisory committee, the advisory committee must produce a written explanation.
The Supreme Judicial Court considered an issue similar to the issue in the present case in LeClair, supra. In LeClair, the plaintiffs brought suit against the Town of Norwell alleging that Norwell violated G.L.c. 7, §38D because Norwell failed to publish an advertisement for design services as required pursuant to G.L.c. 7, §38D. Norwell argued that an advertisement previously published in the central register, which sought bids from architects and engineers for a feasibility study, was sufficient. A firm was selected for the feasibility study from the proposals submitted as a result of the earlier publication. After the feasibility study was performed, it was evaluated by an ■ independent firm. The independent firm approved the feasibility study. Months later, without any additional advertising, Norwell selected the firm which had done the feasibility study to perform the design services contract.
In LeClair, the plaintiffs argued that they could establish a likelihood of success on the merits in light of Norwell’s violation of G.L.c. 7, §38D. The plaintiffs also argued that they established that the public interest would be served by the issuance of the injunction because it is beneficial to the public to encourage individuals to follow the statutory requirements in this area. In LeClair, the Court agreed with plaintiffs that Norwell’s failure to follow G.L.c. 7, §38D did establish a likelihood of success on the merits. The Court, however, did not agree with the plaintiffs’ argument that the public interest would be served by the issuance of the injunction. In fact, the Court stated that the delays in the construction of the school and the increased costs that would result from the issuance of the injunction would severely harm the public interest. LeClair, 430 Mass, at 339.
Ultimately, in LeClair, the Court held that a town, in order to act properly pursuant G.L.c. 7, §38D, must publish an advertisement for design services contracts, even if the town has previously published an advertisement for a feasibility study in conjunction with the same project. Also, according to LeClair, an independent review of the feasibility study must be performed before the design services contract may be awarded.
In the present case, similar to LeClair, plaintiffs have established a likelihood of success on the merits. Based on the record before the court, it appears that the Town may have violated G.L.c. 7, §38D when the Town published the 2000 RFQ. The 2000 RFQ clearly indicates that the Town intended to have Flansburgh perform the design services. This approach, while in good faith, may have called into question the integrity of the contract procedure and decreased public confidence in the procurement system. The Town’s advertisement may have failed to “create an open and honest competition with all bidders on an equal footing.” Petriccia Construction Co. v. Commonwealth, 37 Mass.App.Ct. 392, 397 (1994) (explaining recognized *3 public purposes of analogous competitive bidding statute).
Even though plaintiffs have established a likelihood of success on the merits, an injunction will not issue because plaintiffs have failed to establish that the issuance of the injunction would serve the public interest.
When considering whether the issuance of an injunction would serve the public interest, the court must evaluate how statutory violations affect the public interest. Mass. CRINC, 392 Mass. at 89. The purposes of the Designer Selection Statute are to ensure the highest quality design services for all public building projects, to provide for increased confidence in selection procedures, and to provide safeguards to ensure the integrity of the procurement system. G.L.c. 7, §38Al/2.
Plaintiffs assert that the public interest in upholding the purposes and intent of the Designer Selection Statute outweighs the Town’s interests in promptly addressing its school needs and in obtaining state assistance for this construction. The court understands that compliance with G.L.c. 7, §38D is necessary in order to ensure the integrity of the Designer Selection process. The Court, however, does not agree with plaintiffs that the Town’s failure to comply with G.L.c. 7, §38D creates ramifications so severe that the public interest requires an injunction. To the contrary, if an injunction were to issue, the public interest may be adversely affected. An injunction may threaten funding for the project because the state assistance from year to year is uncertain. As a result, construction might be delayed and construction and design costs may increase (affidavit of Harry K. Harutunian par. 32).[7]
ORDER
For the foregoing reasons, the court hereby ORDERS that plaintiffs’ motion for a preliminary injunction is DENIED.

As defined in G.L.c. 9, §20A.

The School Building Committee did not follow the School Committee’s Designer Selection Policy (the “Policy").

Plaintiffs assert that at this Town Meeting on November 15, 1999, the School Building Committee and the Superintendent of Schools stated that the authorized renovation and addition to the Barrows School had not yet begun because the Superintendent had been informed by the Commonwealth of Massachusetts Department of Education that, in order for the Town to qualify for state financial assistance, the renovation and addition to the Barrows School had to be done simultaneously with the construction of the new school. Plaintiffs maintain that the Superintendent’s statement was not correct.

The 2000 RFQ states, in pertinent part: ‘The Reading School Committee (Awarding Authority) is soliciting proposals from qualified architectural firms interested in contracting to perform the design architectural services and contract administration for construction of a new elementary school and expansion to and renovations of the Barrows School. . .”
It also states: “Such services are to be performed in accordance with a Feasibility Study dated 11/5/98 by Earl R. Flansburgh + Associates, Inc. That Feasibility Study was prepared pursuant to a contract arising from a May 12, 1998 Request for Qualifications for Designer Services, which RFQ had provided that the Reading School Committee as Awarding Authority reserved the right to continue, subject to independent review, with the selected designer beyond the Feasibility Study phase. The Awarding Authority was satisfied with the work performed by Earl R. Flansburgh + Associates, Inc. and after a satisfactory independent review had intended to enter into a contract with Earl R. Flansburgh + Associates, Inc. for the design and construction administration of these projects."

In the affidavit submitted by plaintiffs on July 26, 2000, the affiant states that she had numerous conversations with representatives from other architectural firms that had responded to the 1998 RFQ. These representatives stated that the time frame was “too aggressive,” “unrealistic,” and “too tight.” One representative stated that it was a “bag job." The court recognizes that the statements attributed to these representatives are hearsay.

Plaintiffs also assert (1) that the 1998 RFQ violated G.L.c. 7, §§38Al/2-0, (2) that the time and materials contract between the Town and Flansburgh violated G.L.c. 7, §§38Al/2-0, and (3) that the Building Committee acted improperly because it did not follow the Designer Selection Policy of the School Committee when the Building Committee chose Flansburgh to perform the Feasibility Study. Plaintiffs claim that these alleged violations further support their argument that an injunction should issue. With respect to the time and materials contract, the facts are sharply disputed. More importantly, even if the court determined that a likelihood of success on the merits exists with respect to these issues, the court concludes that the public interest would not be served by the issuance of an injunction.