MAD MAXINE'S WATERSPORTS, INC., & another[1] *vs.* HARBOR-MASTER OF PROVINCETOWN & another.[2]

No. 05-P-1594.

Barnstable. September 15, 2006. - December 13, 2006.

Present: LENK, BERRY, & KATZMANN, JJ.

*Municipal Corporations,* Water commissioners, By-laws and ordinances, Home rule. *Trust,* Public trust. *Constitutional Law,* Home Rule Amendment.

In a civil action challenging the defendant town's by-law restricting to a 200-foot wide channel in the town's harbor the use of propelled personal watercraft, and regulating the launching point and speed of those watercraft, a Superior Court judge properly granted summary judgment in favor of the town, where the by-law was not in conflict with G. L. c. 90B, § 9A [807-810], nor was it void on the ground that the Legislature intended to preclude local action in the field of regulation of personal watercraft, in light of the Legislature's empowerment of municipalities to regulate such vessels in G. L. c. 90B, § 15 [810-811].

A town's adoption of a by-law restricting to a 200-foot wide channel in the town's harbor the use of propelled personal watercraft, and regulating the launching point and speed of those watercraft, was not an encroachment upon the Commonwealth's sovereignty under the public trust doctrine. [811-813]

This court vacated the portion of the judgment in a civil action that permanently enjoined the plaintiffs from violating a local by-law, because equitable relief is not ordinarily available to restrain violations of local ordinances or by-laws that might result in criminal proceedings. [813-814]

CIVIL ACTION commenced in the Superior Court Department on July 30, 2002.

The case was heard by *Catherine A. White,* J., on a motion for summary judgment.

*Evan T. Lawson* for the plaintiffs.

*Michele E. Randazzo* for the defendants.

BERRY, J. In May, 2002, the town of Provincetown approved

---

[1]Geneva Cook.

[2]Town of Provincetown.

an amendment to the Provincetown General By-laws (hereinafter, the by-law) that restricts to a 200-foot wide channel in Provincetown Harbor the use of propelled "personal watercraft" — including, as most relevant to this appeal, propelled water "jet skis."[3] The by-law also restricts the launching into the harbor of such watercraft to a single point at the West End Beach. Further, the by-law provides that, while in the channel, these watercraft must operate at "headway speed," the slowest speed of operation that will maintain steerage.[4] The combined effect of these restrictions is that a jet ski or other personal watercraft may only pass through Provincetown Harbor in a designated 200-foot wide "lane" at headway speed and proceed to the ocean waters beyond the bounds of the harbor.

The town justifies adoption of the by-law in light of the nature and use of Provincetown Harbor, and particular safety concerns and risks that would be presented were there to be widespread and unregulated use of personal watercraft and jet skis in the harbor. Provincetown Harbor is an active and popular swimming place and port of call for boating. Many small recreational craft move about the harbor. In addition, because Provincetown's harbor has a deep navigable channel, large commercial boats, ferries, and whale watching boats also move within the harbor. Given that Provincetown Harbor is so very busy, populated by people swimming and fishing and many boats large and small traveling about, the town asserts that the restrictions were crafted in order to lessen the danger personal watercraft and jet skis pose to people swimming in the harbor, and to reduce the risk of boat crashes as these individually operated watercraft bob and weave in the harbor waters — a

---

[3]The by-law at issue, § 13-4-2 of the Provincetown General By-laws, defines "personal watercraft" as "a vessel propelled by a water-jet pump or other machinery as its primary source of propulsion that is designed to be operated by a person sitting, standing or kneeling on the vessel rather than being operated in the conventional manner by a person sitting or standing inside the vessel." Provincetown General By-laws § 13-4-2-1-1. There is no dispute that the term "personal watercraft" in the by-law includes the jet skis at issue in this case.

[4]Although "headway speed" is not defined by the by-law, it is elsewhere defined as "the slowest speed at which a personal watercraft . . . can be operated and maintain steerage way." G. L. c. 90B, § 9A, inserted by St. 1989, c. 681, § 1.

risk that is enhanced by the turbulence and waves flowing from the wake of the larger ships moving in the harbor. The town also justifies the by-law as reducing the environmental impact of engine discharge from personal watercraft, and as ameliorating the nuisance effect of the loud noise which echoes from their water-jet propulsion engines.

Soon after adoption, the by-law was the subject of legal challenge by the plaintiffs, Mad Maxine's Watersports, Inc. (Mad Maxine's), a business that rents personal watercraft for customers' use in Provincetown Harbor, and Geneva Cook, an individual who has used, and says she wants to continue to use, personal watercraft within the harbor. The plaintiffs' lawsuit sought a declaration that the by-law was in violation of various provisions of the Federal and State Constitutions, including art. 89, § 6, of the Amendments to the Massachusetts Constitution (the Home Rule Amendment), and the public trust doctrine, which, as further described herein, involves the rights of the public to conduct activities on waters and underlying tidelands of the Commonwealth below mean low water mark.[5,6]

In the Superior Court, the town moved for a summary judg-

---

[5]The case was originally filed in the Superior Court, but then was removed to the United States District Court on the ground that the complaint presented claims under the equal protection clause of the Fourteenth Amendment to the United States Constitution. A Federal judge denied the plaintiffs' motion for a preliminary injunction, ruling that the plaintiffs had failed to demonstrate a likelihood of success on their claims that the by-law was constitutionally invalid. Following the denial of the preliminary injunction, and after a stipulation of dismissal of the Federal claims and certain of the State law claims, the United States District Court judge, upon request of the parties, remanded the case to the Superior Court for litigation of the remaining State law claims.

[6]There were also criminal proceedings commenced in the Massachusetts District Court against Christine Maxwell, owner of plaintiff Mad Maxine's, for failure to pay fines imposed as a result of three citations issued pursuant to the by-law. The criminal proceedings are not at issue here. We take judicial notice, however, that, as the record appendix reflects, Maxwell moved to dismiss the criminal complaint on grounds similar to those advanced in this appeal; namely, that the by-law violated the Home Rule Amendment as inconsistent with G. L. c. 90B, § 9A. That motion to dismiss was denied by the District Court judge on the basis that the by-law set forth reasonable restrictions and that G. L. c. 90B, § 9A, did not prohibit local regulation and did not place the exclusive right to regulate personal watercraft with the Commonwealth.

ment that the by-law was validly enacted and enforceable. That summary judgment motion was allowed. The two challenges to the validity of the by-law presented in this appeal[7] pose pure questions of law predicated on the Home Rule Amendment and the public trust doctrine governing sovereign rights over Massachusetts waterways and below tidelands. For the reasons that follow, we hold that the Provincetown by-law is a lawful home rule provision and does not violate the public trust doctrine. Accordingly, we affirm.

1. *The Home Rule Amendment.* Under the Home Rule Amendment, "[a]ny city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, *which is not inconsistent with the constitution or laws enacted by the general court . . . .*" (emphasis supplied). Art. 89, § 6, of the Amendments to the Massachusetts Constitution. Considerable latitude is given to municipalities in enacting local by-laws. Only enactments that present a "sharp conflict between the local and State provisions" will be held invalid. *Rogers* v. *Provincetown*, 384 Mass. 179, 181 (1981), quoting from *Bloom* v. *Worcester*, 363 Mass. 136, 154 (1973). "The sharp conflict necessary to repugnancy 'appears when either the legislative intent to preclude local action is clear, or, absent plain expression of such intent, the purpose of the statute cannot be achieved in the face of the local by-law.' " *Rogers* v. *Provincetown, supra*, quoting from *Grace* v. *Brookline*, 379 Mass. 43, 54 (1979). In other words, "sharp conflict" requires either a contravention of the statutory purpose or an intent by the Legislature to preclude local regulation.

The plaintiffs contend that the Provincetown by-law is in sharp conflict with, and would defeat the purposes of, a State statute, G. L. c. 90B, § 9A. That statute provides, in relevant part, as follows:

"No person shall operate a jet ski, surf jet or wetbike[8]

---

[7]The remaining claims advanced by the plaintiffs were the subject of a dismissal stipulation during the proceedings in the United States District Court. See note 5, *supra.*

[8]The statute elsewhere defines "jet skis" as "a ski propelled by machinery and designed to travel over water"; "surf jet" as "a surfboard propelled by

(a) on waters of the commonwealth unless the person is sixteen years of age or older, (b) within one hundred and fifty feet of a swimmer, shore or moored vessel, except at headway speed, (c) on waters of the commonwealth of less than seventy-five acres, (d) without wearing an approved personal flotation device or (e) between sunset and sunrise."

G. L. c. 90B, § 9A, inserted by St. 1989, c. 681, § 1. According to the plaintiffs, the Provincetown by-law infringes an affirmative right to use a personal watercraft on Commonwealth waterways, which right inherently lies within the above quoted provisions of § 9A, and which right, by virtue of its Statewide statutory application, displaces local authority under home rule. Specifically, the plaintiffs submit that because § 9A restricts the operation of personal watercraft on waters of the Commonwealth less than seventy-five acres, the converse applies: that is, if the waters are greater than seventy-five acres, then, say the plaintiffs, there is an absolute right to operate a personal watercraft or jet ski on the broader waterways.[9] From there, the plaintiffs extrapolate to the proposition that the Provincetown by-law is an unlawful regulation under the Home Rule Amendment because the by-law effectively bans the free operation of personal watercraft in Provincetown Harbor, cutting off the inherent right of watercraft use the plaintiffs see as implicitly residing in G. L. c. 90B, § 9A.

The first, and insurmountable, problem with the plaintiffs' novel theory of a sharp conflict between the Provincetown by-law and the Commonwealth's law, G. L. c. 90B, § 9A, is that the entire theory rests on a nonexistent absolute right (to operate personal watercraft) that is nothing more or less than virtu-

---

machinery and designed to travel over water"; and "wetbike" as "a vessel designed to travel over water, supported by skis propelled by machinery." G. L. c. 90B, § 1, as amended by St. 1985, c. 498, §§ 1-3.

[9]Although it is not clearly articulated in their briefs, the plaintiffs seem to concede that the right to operate a personal watercraft and jet skis only "vests" when all five standards set forth in § 9A are met. In this appeal, it is the element in § 9A relating to the acreage of the waterway that is principally cited as posing the sharp conflict between the Provincetown by-law and this State statute.

ally imagined as lying within § 9A.[10,11] Section 9A is not subject to the reading the plaintiffs would engraft upon it. The section, whether on its face or by implication, cannot be read as conferring an absolute and unregulable right on individuals to operate jet skis or other personal watercraft in waterways of greater than seventy-five acres. Rather, the plain words of G. L. c. 90B, § 9A, are more reasonably construed as setting forth minimum regulatory guidelines and standards for the operation of personal watercraft. "[T]he primary source of insight into the intent of the Legislature is the language of the statute." *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 853 (1983). The plain terms of § 9A codify quotidian regulatory details consonant with the setting of minimum standards for personal water-

---

[10]In seeking to invoke an absolute usage right, the plaintiffs rely heavily on *Rogers* v. *Provincetown*, 384 Mass. at 181-182, and *American Motorcyclist Assn.* v. *Park Commn. of Brockton*, 412 Mass. 753, 755 (1992) (*American Motorcyclist*). Both cases are distinguishable and involve granted statutory rights to operate motor vehicles on the public roadways of the Commonwealth. The statutory provision at issue in *Rogers* expressly stated that "[e]very person operating a motorized bicycle upon a way *shall have the right* to use any public ways in the commonwealth . . ." (emphasis supplied). *Rogers* v. *Provincetown*, 384 Mass. at 179, quoting from G. L. c. 90, § 1B, inserted by St. 1976, c. 261, § 4. At issue in *American Motorcyclist* was another portion of G. L. c. 90 that refers to the "[r]ight to operate" a motor vehicle "conferred by a license issued under section eight, a learner's permit issued under section eight B, or by reciprocity to nonresidents under sections three and ten." *American Motorcyclist*, 412 Mass. at 757, quoting from G. L. c. 90, § 1. The statute as a whole "establish[es] that those who fulfil the requirements of § 8 or §§ 3 and 10 also *have a right to operate on the ways of the Commonwealth*" and, accordingly, the *American Motorcyclist* court invalidated a proposed ban on motorcycles on roadways within Brockton parks. *Id.* at 757 (emphasis supplied). There are, however, no similar statutory rights to operate a watercraft set forth in G. L. c. 90B, and the aforecited cases do not advance the plaintiffs' theory for invalidating the Provincetown by-law.

[11]The plaintiffs' contention that the by-law is a total ban on the operation of personal watercraft is incorrect. The by-law is not an outright prohibition, but rather restricts the use of such watercraft to a portion of the harbor to traverse within a defined channel and proceed beyond the harbor's inner boundaries. Although argued in the extreme by both sides — the plaintiffs contending that the by-law is an absolute ban, and the defendants contending that it is not such a ban but, even if it were, a total ban by a town would be valid and enforceable — this by-law and this case does not present the issue — and we need not reach the question — whether a municipality could, consonant with G. L. c. 90B, § 9A and § 15, adopt a total ban on personal watercraft within its waters under the Home Rule Amendment.

craft use and operation, e.g., the minimum distance to be maintained as a buffer between the watercraft and a swimmer or other vessel, hours of approved use, a minimum age of sixteen years for an operator, and a requirement of wearing approved flotation devices. Given this micro level of detail in § 9A, the plain language of the statute supports the minimal standards construction. "Where the language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words." *Anderson Street Assocs.* v. *Boston*, 442 Mass. 812, 816 (2004), quoting from *Gurley* v. *Commonwealth*, 363 Mass. 595, 598 (1973). Accordingly, we reject the plaintiffs' argument that the Provincetown by-law is an invalid home rule regulation, because the by-law is not in "sharp conflict" with G. L. c. 90B, § 9A.

We turn next to the related basis of challenge to this home rule regulation by Provincetown, which is that the by-law is void because the field of regulation of personal watercraft is exclusive to the sovereign Commonwealth. A by-law enacted by any town exceeds that town's power under the Home Rule Amendment if "the legislative intent to preclude local action is clear." *Rogers* v. *Provincetown*, 384 Mass. at 181, quoting from *Grace* v. *Brookline*, 379 Mass. at 54.

However, the plaintiffs' claim that local action is precluded, and that exclusive sovereignty rests in the Commonwealth alone, is addressed and resolved adversely to the plaintiffs by the Legislature's express delegation in G. L. c. 90B, § 15, inserted by St. 1960, c. 275, § 2, which provides, in relevant part:

> "(*a*) The provisions of this chapter shall govern the numbering, operation, equipment and all other matters relating thereto of any vessel subject to the provisions of this chapter or of any rule or regulation made under authority hereof . . . .
>
> "(*b*) Nothing in this section shall be construed as prohibiting any city or town from regulating, by ordinance or by-law, not contrary to the provisions of this chapter or of any rule or regulation made under authority hereof, other than numbering, of such vessels on such waters of the commonwealth as lie within the city or town, or such activities which take place thereon. . . .

"(*c*) No such ordinance or by-law shall be valid unless it shall have been approved by the director [of the division of law enforcement of the Department of Fisheries, Wildlife and Environmental Law Enforcement] and published in a newspaper of general distribution in said city or town not less than five days before the effective date thereof."[12]

As is clear from § 15(*b*) and (*c*), the Legislature empowered municipalities to "regulat[e] . . . vessels on such waters of the Commonwealth as lie within the city or town, or such activities which take place thereon," so long as such regulation is not contrary to the provisions of c. 90B or its implementing rules or regulations, and so long as prior notice and approval by the appropriate State official are given. This broad legislative grant to municipalities of the power to regulate "vessels" is expansive enough to include the subset of personal watercraft and jet-skis, as the definition of "vessel" under c. 90B encompasses "watercraft of every description." G. L. c. 90B, § 1, inserted by St. 1960, c. 275, § 2.

Given the G. L. c. 90B, § 15, delegation to cities and towns, we discern no clear legislative intent to preclude local regulation. Furthermore, the setting of minimum standards by the Legislature on a Statewide basis in G. L. c. 90B, § 9A, still leaves ample room for municipal regulation of personal watercraft under the Home Rule Amendment.

2. *The public trust doctrine.* "Under the public trust doctrine, sovereigns hold shorelands in trust for the use of the public. See *Boston Waterfront Dev. Corp.* v. *Commonwealth*, 378 Mass. 629, 631-632 (1979) (providing history of public trust doctrine). . . . The Commonwealth, as successor to the colonial authorities, owns and controls lands seaward of the flats. See *Michaelson* v. *Silver Beach Improvement Ass'n, Inc.*, 342 Mass. 251, 253-254 (1961). These lands are held in trust by the Commonwealth to preserve the general rights of the public. See *id.* at 253, quoting *Home for Aged Women* v. *Commonwealth*, 202 Mass. 422, 427 (1909) ('The waters and the land under [waters] beyond the line of private ownership are held by the State, both

---

[12]It is not in dispute that here the town complied with the approval and publication requirements of § 15(*c*).

as owner of the fee and as the repository of sovereign power, with a perfect right of control in the interest of the public')." *Fafard* v. *Conservation Commn. of Barnstable*, 432 Mass. 194, 198-199 (2000). The Commonwealth is "sovereign[] hold[ing] shorelands in trust for the use of the public," and "[t]he Commonwealth's authority with respect to [lands seaward of the flats] is subject only to Federal law, the State Constitution, and the State's obligations as trustee." *Id.* at 199 (footnote omitted). The plaintiffs argue that Provincetown's adoption of the by-law is an encroachment upon the public trust. The argument advanced is that the by-law restricts the public's right of free navigation on the waters of the Commonwealth, and that free navigable waters, such as in Provincetown Harbor, are subject to regulation exclusively under the Commonwealth's sovereign power.

This argument fails at the threshold. The exclusive sovereign power recognized in the public trust doctrine is subject to Legislative delegation to municipalities. "This history of the origins of the Commonwealth's public trust obligations and authority, as well as jurisprudence and legislation spanning two centuries, [establishes] that only the Commonwealth, *or an entity to which the Legislature properly has delegated authority, may administer public trust rights.*" (emphasis supplied). *Ibid.* There has been such a delegation here by virtue of G. L. c. 90B, § 15, wherein the Legislature plainly has authorized towns to regulate vessels, including personal watercraft. Specifically in § 15(*b*), the Legislature granted cities and towns the authority to regulate "by ordinance or by-law . . . vessels on such waters of the commonwealth as lie within the city or town, or such activities which take place thereon."[13] There is, accordingly, no

[13]The plaintiffs cite *Fafard* v. *Conservation Commn. of Barnstable*, 432 Mass. at 200, in support of invalidating the Provincetown by-law as inconsistent with the public trust doctrine. The Barnstable by-law at issue in *Fafard*, however, was quite different. The Barnstable by-law sought to vest the power to protect "public trust rights in trustlands" in a local conservation commission, which under the Barnstable by-law had authority to promulgate regulations on activities affecting wetlands, and in these undertakings, "to regulate work in and around wetlands more strictly than does the State's wetlands protection act." *Id.* at 196. The court held that the Legislature had not delegated to municipalities the range and breadth of powers to protect the

encroachment upon the Commonwealth's sovereignty under the public trust doctrine.[14]

3. *The injunction against future violations.* In the final form of the judgment, a permanent injunction entered restraining the plaintiffs from engaging in further violations of the by-law. The plaintiffs argue that the defendants had waived their claim for injunctive relief oral argument in open court at the hearing on the motion for summary judgment.

The record does not clearly reflect whether the request for injunctive relief was indeed waived. In any event, the record on the claim for injunctive relief is undeveloped. On this record, we cannot ascertain whether (or if so, how) the judge determined that the requested order promotes the public interest (or, in the alternative, that the equitable relief will not adversely affect the public). See, e.g., *Edwards* v. *Boston*, 408 Mass. 643, 647 (1990). More fundamentally, on this record, we see no reason to diverge from the usual rule that equitable relief is not ordinarily available to restrain violations of local ordinances or by-laws that may result in criminal proceedings.[15] See *Revere* v. *Aucella*, 369 Mass. 138, 146-147 (1975), appeal dismissed sub nom. *Charger Invs., Inc.* v. *Corbett*, 429 U.S. 877 (1976) (denying

public trust that Barnstable sought to exercise by adopting regulations stricter than any imposed by the sovereign Commonwealth under the public trust doctrine. *Ibid.* Unlike the Barnstable by-law challenged and held invalid in *Fafard*, the Provincetown by-law here does not purport to administer the public trust in a manner inconsistent with State laws, but rather flows from, and is consistent with, the Legislature's delegation of power to towns and cities to regulate vessels upon local waterways under G. L. c. 90B, § 15.

[14]The main limitation on a town's exercise of the power to regulate vessels under G. L. c. 90B, § 15(*b*), is that the regulation must not be "contrary to the provisions of [c. 90B] or of any rule or regulation made under authority [t]hereof." For the reasons addressed above, particularly in part 1, the Provincetown by-law is not contrary to the provisions of c. 90B, including § 9A.

[15]The by-law provides for enforcement "by the Provincetown Harbormaster or his designee, the Provincetown Police Department, or the Massachusetts Environmental Police," and monetary fines are specified for violations. In the instant case, the record reflects that the harbormaster initially issued verbal warnings to a supervisor at Mad Maxine's. When these verbal warnings were unheeded, written citations were issued to Mad Maxine's. The written citations, pursuant to the by-law, imposed a fine of $100 per violation. Upon Mad Maxine's failure to pay the fines, criminal proceedings were instituted against the owner of Mad Maxine's. See note 6, *supra.*

injunction to enforce local criminal ordinance in the absence of express statutory authority), and authorities cited. Accordingly, we vacate that portion of the amended judgment (paragraphs 1 and 2) which permanently enjoined the plaintiffs from violating the by-law.[16] Otherwise, the amended judgment in the defendants' favor, declaring the Provincetown by-law to be valid and enforceable, and dismissing other claims of the plaintiffs, is affirmed.[17]

*So ordered.*

---

[16]Enforcement actions and criminal proceedings would still of course be available to address any future violations of the by-law.

[17]The defendants have requested an award of appellate attorney's fees and costs in connection with this appeal. See Mass.R.A.P. 25, as appearing in 376 Mass. 949 (1979). Although we reject the plaintiffs' primary challenges to the judgment, we do not consider the appeal frivolous. Although it is true that several courts had rejected the plaintiffs' contentions, we do not believe, as the defendants seem to, that this stripped the plaintiffs of their right to pursue appellate relief in this court. We deny the defendants' request.